UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

IN RE:

Priest Enterprises, LLC

    Debtor.

_____/

Case No: GG 24-00677
Chapter 11, Subchapter V
Hon. John T. Gregg
Filed On: March 15, 2024

### PRIEST ENTERPRISES, LLC's EMERGENCY MOTION FOR ENTRY OF AN INTERIM AND FINAL ORDER (A) AUTHORIZING IT TO USE CASH COLLATERAL; AND (B) PROVIDING ADEQUATE PROTECTION AND OTHER RELIEF

Priest Enterprises, LLC, ("Debtor"), through its attorneys, Martin L. Rogalski PC, files its *Emergency Motion for Entry of an Interim and Final Order (A) Authorizing It to use Cash Collateral; and (B) Providing Adequate Protection and Other Relief* (the "Motion"), and in support of its Motion states as follows:

### JURISDICTION

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

2. This matter is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(M).

3. Venue of this proceeding and the Motion is in this District is proper under 11 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are 11 U.S.C. §105(a), 361 & 363.

### PROCEEDURAL BACKGROUND

4. On March 15, 2024 ("Petition Date"), Debtor filed its Bankruptcy Petition ("Petition") under Chapter 11, Subchapter V, of the United States Bankruptcy Code ("Bankruptcy Code").

5. Debtor filed this Motion as soon as practical after the Petition Date.

1

6. Debtor continues to operate its business and manage its financial affairs as a debtor-in-possession pursuant to 11 U.S.C. §1184 of the Bankruptcy Code.

7. Debtor is in immediate need for an Order authorizing the use of cash collateral to meet payroll obligations, sustain its operations, and preserve its assets for the benefit of its creditors.

8. Debtor files this Motion pursuant to Fed. R. Bankr. P. 4001 and L.B.R. 4001-2 (W.D.M.).

## RELIEF REQUESTED

9. Debtor is engaged in the operation of a landscaping business which services customers primarily in Ottawa County and Kent County in Michigan. It also plows show in the winter months.

10. Mr. Peter R. Priest III ("Priest, III") is Debtor's sole member and has the primary responsibility to run its day-to-day operations. His declaration in support of the Motion is attached hereto as "**Exhibit A**."

11. The business address for the Debtor is 1752 Dewent Unit #1, Jenison, MI 49428.

12. The Debtor has been in existence since 2008.

13. For the calendar year 2023, the company had a gross income of $1,254,159.00.

14. For the calendar year 2022, the company had a gross income of $1,228,198.00.

15. As a result of financial complications that resulted from the COVID-19 pandemic, including increased inventory costs, labor costs, transportation costs, and the unusually mild winter of 2023-2024, the Debtor is unable to pay its obligations going forward.

16. Debtor anticipates that its net income will significantly increase as a result of its Chapter 11 proceeding by: (i) reducing the number of its employees; (ii) "cramming down" its secured loans to the Small Business Administration; (iii) discharging most of its junior secured and unsecured claims; (iv) reducing to reliance upon winter snow plowing; and (v) selling some of its surplus equipment and vehicles.

17. Debtor currently employs approximately 3 full-time employees and 12 part-time employees.

18. Debtor's next payroll is March 22, 2024.

19. Debtor is in immediate need of an Order authorizing the use of cash collateral in order to sustain its operations and preserve its assets for the benefit of the estate and the creditors while it seeks to negotiate and develop its Chapter 11, Subchapter V, plan of reorganization.

20. Through this Motion, Debtor seeks the entry of interim and final Orders (i) granting and affirming adequate protection to Debtor's creditors secured against cash collateral, (ii) authorizing Debtor's use of cash collateral; and (iii) scheduling a final hearing.

### **DEBTOR'S CASH COLLATERAL AND SECURED CREDITORS**

21. Debtor has an immediate need for use of cash collateral to continue its operations, purchase inventory, meet its payroll, and fund other ordinary post-petition operating expenditures, such as utilities and insurance, to preserve the value of its estate for the benefit of creditors.

22. Debtor prepared 30-day and 180-day operating budgets and income projections ("Budget"), attached as "**Exhibit B: Cash Flow Projection**," which provide detailed projections of Debtor's anticipated sales and anticipated expenditures that are necessary for Debtor to continue ordinary operations and to avoid irreparable harm to the estate for the next 180 days.

23. Debtor believes that the value of the Cash Collateral assets will not change substantially over the next 90 days, and that Debtor can successfully reorganize.

24. As Debtor's sole member, Priest has the primary responsibility for Debtor's strategic decisions, including overseeing its liabilities, assets, income, and expenses. His Sworn

Statement in support of this Motion and Budget is attached as "**Exhibit A: Sworn Statement of Peter R. Priest III.**"

25. The following is a summary of Debtor's estimated assets on the Petition Date as disclosed in Debtor's Bankruptcy Schedules:

    a. Cash                                    $ 200.00
    b. Bank Accounts                           $ 25,545.38.00
    c. Accounts Receivable                     $ 27,100.00
    d. Inventory                               $ 28,800.00
    e. Pre-paid Taxes                          $ 0.00
    f. Office, Furniture, Electronics          $ 1,750.00
    g. Vehicles, Trailers, Equipment           $ 310,000.00

    **Total Assets:**                          **$ 400,395.38**

26. The value of Debtor's "Cash Collateral" is approximately $81,645.38.00, which includes Debtor's Cash, Bank Accounts, Accounts Receivable, pre-paid taxes, and inventory.

27. The Debtor charges a flat fee, usually paid in advance for all residential and some commercial accounts, before taking a client on as a customer for landscaping care. Others are billed hourly or per trip. Landscaping care primarily is cutting grass, weed control, and fertilization.

28. Debtor believes the following lenders ("Secured Creditors") are likely to assert an interest in one or more of the aforementioned assets:

    a. Huntington National Bank
        i. First Priority UCC – filed June 20, 2019 (continuation 12/29/23)
        ii. Amount:  $48,000.00 & $138,601.00 = $186,601.00

    b.  Small Business Administration
        i. Second Priority UCC – filed June 18, 2020

      ii. Amount: $477,600.00

      iii. Lien on: All assets (excluding titled motor vehicles valued for $96,500)

29. Upon information and belief, there are no other secured creditors that could claim any interest in Debtor's cash collateral.

30. Debtor has additional secured liabilities; however, none of those liabilities are secured against cash collateral. Each additional secured liability is secured to specific personal property, including vehicles and equipment.

## BASIS FOR RELIEF

31. 11 U.S.C. §§ 363(c)(2) & 1184 set the terms for a Court's approval for use of cash collateral, providing that a debtor "may not use, sell, or lease cash collateral . . . unless (A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section."

32. Under sections 363(e) & 1184, upon request of an entity that has an interest in property to be used by the debtor, "the Court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest."

33. Adequate protection serves to protect secured creditors from a diminution in the value of its collateral during the Chapter 11 proceeding. *In re Kain*, 86 B.R. 506, 513 (Bankr. W.D. Mich 1988).

34. Debtor has the burden of establishing that a secured creditor is adequately protected. 11 U.S.C. § 363(p).

35. "A debtor, attempting to reorganize a business under chapter 11, clearly has a compelling need to use 'cash collateral' in its effort to rebuild." *In re George Ruggerie Chrysler-Plymouth, Inc*, 727 F.2d 1017, 1019 (11th Cir. 1984).

5

**DEBTOR'S USE OF CASH COLLATERAL**

36. The use of cash collateral is necessary to preserve the value of Debtor's estate and benefit its creditors.

37. Debtor requires use of the cash collateral to pay its employees and ordinary expenses of operating the business, such as insurance, rent, utilities, and inventory, as well as payment of post-petition professional expenses and fees as approved by this Court.

38. Debtor also requires use of the cash collateral to maintain and preserve assets, including repairs and maintenance of its equipment, machinery, and vehicles.

39. Accordingly, use of cash collateral is essential to avoid irreparable harm to Debtor by preventing Debtor from generating revenue sufficient to continue operating its business and to preserve the value of the estate.

40. Debor anticipates that it can operate at net neutral or a net-profit over the next 90 days while maintaining its historical pre-petition inventory.  **See Exhibit B: Cash Flow Projection**

41. Pursuant to the adequate protection identified below, Debtor submits that it should be granted authority to use the cash collateral.

**OFFERS OF ADEQUATE PROTECTION OF SECURED CREDITORS**

42. As adequate protection for the use of the Cash Collateral described in Paragraphs 26-27, Debtor offers the following as adequate protection under 11 U.S.C. §§ 361 & 363 concerning any diminution in pre-petition collateral:

    a. Debtor will pay Huntington Bank's monthly installments as they become due in the ordinary course of business. Huntington Bank holds the first priority secured position against Debtor's cash collateral.

    b. Debtor will pay the Small Business Administration the sum of $1,000 per month at current rate of interest, upon the amount of $96,253.00, its estimated value of security to which its lien attaches.

    c. Secured Creditors shall be granted continuing and replacement security interests in liens on all of the Debtor's post-petition property, excluding Debtor's rights under 11 U.S.C. §544 et seq.; however, nothing in this paragraph shall be deemed to provide any creditor with an <u>improvement</u> of position from the values of said creditor's respective collateral, as of the date of the Petition nor grant any interests in any property which said creditor does not have a properly perfected lien;

    d. The proceeds of any sale by Debtor of any property that is subject to liens held by Secured Creditors (other than sales in the ordinary course of business) shall, unless said creditor agrees in conjunction with the approval of a sale under 11 U.S.C. § 363 of the Code or the Court orders otherwise, be paid to said creditor for application to said creditor's indebtedness; and

    e. Debtor shall supply financial information and information relating to the collateral as is reasonably requested by each secured creditors. In the event that Debtor and the secured creditors cannot agree as to what report(s) shall be provided, the Court shall, upon notice and a hearing, make a determination. Debtor anticipates it will provide Secured Creditors with (i) profit & loss statements; (ii) payables aging; (iii) accounts receivable aging; (iv) copies of such reports and documents as are required to be filed with the Office of the United States Trustee; and (v) proof of timely payment of taxes and insurance.

43. Debtor believes these procedures will adequately protect the secured creditors.

44. Debtor's use of cash collateral pursuant to the order shall cease upon the occurrence of one of the following: (i) Debtor fails to comply with its promises of adequate assurance in any fashion; (ii) the appointment of a Chapter 11 trustee; (iii) conversion of this Chapter 11 proceeding to a Chapter 7; (iv) this Chapter 11 proceeding is dismissed without the consent of the Secured Creditors; or (v) a material diminution in the amount of the Debtor's cash collateral and, after notice and hearing, the Court determines that the cash collateral is in excess of any adequate protection provided herein.  Debtor reserves its right to contest a default in the event that a secured creditor declares a default under this paragraph and, upon a determination by the Court that the adequate protection is intact, Debtor shall not be deemed in default hereunder.

## **NOTICE**

45. Notice of this Motion will be provided to (a) the United States Trustee for the Western District of Michigan and the trial attorney assigned to the case; (b) all creditors identified by Debtor which may have a secured claim in Cash Collateral; (c) Debtor's twenty largest unsecured creditors; (d) any other parties required to be served by Fed. R. Bankr. P. 4001; and (e) any party that has filed, prior to such date, a request for notices with this Court.

46. Debtor further requests that the Court schedule a final hearing on this Motion and authorize it to serve copies of an interim order entered by the Court which fixes the time, date, and manner for the filing of objections to (a) the United States Trustee for the Western District of Michigan and the trial attorney assigned to the case; (b) all creditors identified by Debtor which may have a secured claim in Cash Collateral; (c) Debtor's top twenty unsecured creditors; (d) any other parties required to be served by Fed. R. Bankr. P. 4001; and (e) any party that has filed, prior to such date, a request for notices with

this Court. Debtor requests that the Court consider such notice of the final hearing to be sufficient under Fed. R. Bankr. P. 4001.

**WHEREFORE**, Priest Enterprises, LLC requests that this Honorable Court enter an order, substantially in the form attached as "**Exhibit C: Proposed Order**," granting the relief requested herein and such other and further relief as it deems just and proper.

MARTIN L. ROGALSKI, P.C.

Dated: March 20, 2024

By: /s/ Martin L. Rogalski
Martin L. Rogalski P-30548
1881 Georgetown Center Drive
Jenison, MI  49428
(616) 457-4410